UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| XIFIN, INC., a California Corporation,<br><br>                                             Plaintiff,<br><br>v.<br><br>DIAGNOSTIC LAB SERVICES, LP, a Texas limited partnership,<br><br>                                           Defendant. | Case No.: 18-CV-890 JLS (BLM)<br><br>**ORDER GRANTING MOTION FOR DEFAULT JUDGMENT**<br><br>(ECF No. 12) |

     Presently before the Court is Plaintiff XIFIN Inc.'s Motion for Default Judgment ("Mot.," ECF No. 12). After reviewing Plaintiff's briefing and supporting evidence and weighing the relevant factors, the Court **GRANTS** Plaintiff's Motion for Default Judgment.

## BACKGROUND

     Plaintiff XIFIN, Inc. is a San Diego-based healthcare information technology company that provides clients with cloud-based billing services, which Plaintiff provides through its proprietary Revenue Performance Management ("RPM") system. ECF No. 1 ("Compl.") at 3.[1] The RPM system helps medical facilities submit claims to insurance

---

[1] For ease of reference, the Court cites to the CM/ECF page numbers stamped at the top of the page.

companies, government operated programs, and individuals. *Id.* Defendant Diagnostic Lab Services, LP is a laboratory that provides diagnostic services to healthcare providers in the United States. *Id.*

On August 17, 2016, Plaintiff and Defendant entered into a three-year "Systems and Services Agreement" ("Services Agreement"). *Id.* Under the Services Agreement, Plaintiff was to configure its RPM system to agreed specifications, provide Defendant system access, and provide ongoing support and services related to the processing and management of Defendant's claims to third parties. *Id.* at 3–4. Defendant's obligation under the Services Agreement was to pay an implementation fee and ongoing service fees. *Id.*

Plaintiff implemented the RPM system on or about January 1, 2017, and Defendant began processing bills through the system. *Id.* Plaintiff thereafter processed Defendant's billings until, on August 29, 2017, Plaintiff terminated the Services Agreement because Defendant failed to pay any of the service fees that were due. *Id.* at 5.

On October 17, 2017, Plaintiff filed a complaint against Defendant for breach of contract. Mot. at 5 (citing *XIFIN v. Diagnostic Lab Serv.*, *LP*, No. 17-cv-02134-CAB-BLM (S.D. Cal. filed Oct. 17, 2017), ECF No. 1). On December 7, 2017, the Parties entered into a settlement agreement in which the Parties agreed to mutual releases and settlement of all claims in exchange for Defendant paying Plaintiff $200,000. *Id.* The agreement required Defendant to pay the amount over the course of ten equal installments of $20,000, beginning in December 2017 and continuing each month thereafter. *Id.* Under the settlement agreement, the Parties agreed that if Defendant "fail[ed] to timely make any payment required under . . . this Agreement, [Plaintiff], at its sole discretion, may re-file a breach of contract lawsuit against [Defendant] (and/or its successors, transferees, and assigns) for breach of the [Services Agreement]." *Id.*; *see also* Declaration of Tammy Lawrence ("Lawrence Decl."), Ex. A at 3, ECF No. 12-4.

Defendant paid Plaintiff $20,000 on December 8, 2017. Mot. at 5. On the same day, Plaintiff filed with the court a notice of voluntary dismissal without prejudice of all claims

against Defendant. *Id.* (citing *XIFIN*, Case No. 17-cv-02134-CAB-BLM, ECF No. 6). On January 30, 2018, Defendant paid Plaintiff $10,000. *Id.* Since then, Plaintiff has failed to make any further payments. *Id.*

After Defendant failed to make timely payments, Plaintiff filed the Complaint in the instant action on May 8, 2018. *Id.* at 5–6. On June 29, 2018, Plaintiff filed an Affidavit of Due Diligence, stating that its attempt to serve Defendant was unsuccessful because Defendant was no longer at its place of business and there was a sign on the door stating, "the locks have been changed due to tenant default." ECF No. 3. On August 8, 2018, Plaintiff served the complaint on the State of Texas, Secretary of State. Mot. at 6. Defendant failed to file any responsive pleading, *id.*, and on January 14, 2019, the Clerk entered default against Defendant. ECF No. 10. Plaintiff filed the instant motion now before the Court.

## LEGAL STANDARD

Federal Rule of Civil Procedure 55 permits a court to enter default judgment upon a party's application. Although default judgments are ordinarily disfavored, a court may grant or deny a motion for default judgment at its discretion. *See Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988) (citing *Haw. Carpenters' Tr. Funds v. Stone*, 794 F.2d 508, 511–12 (9th Cir. 1986); *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980)).

The Ninth Circuit has set out seven factors, known as the *Eitel* factors, that a court may consider when exercising its discretion as to whether or not to grant default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel*, 782 F.2d at 1471–72.

When weighing these factors, the well-pleaded factual allegations of the complaint are taken as true, except for those allegations relating to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987); *see also* Fed. R. Civ. P. 8(b)(6). To prove damages, a plaintiff may submit declarations, or the Court may hold an evidentiary hearing. *See Affinity Grp., Inc. v. Balser Wealth Mgmt., LLC*, No. 05CV1555 WQH (LSP), 2007 WL 1111239, at *1 (S.D. Cal. Apr. 10, 2007); *see also Taylor Made Golf Co. v. Carsten Sports*, 175 F.R.D. 658, 661 (S.D. Cal. 1997) ("In assessing damages, the court must review facts of record, requesting more information if necessary, to establish the amount to which plaintiff is lawfully entitled upon judgment by default.").

## ANALYSIS

**I. Jurisdiction**

To enter default judgment against Defendant, the Court must first determine it has subject-matter jurisdiction. *See Twitch Interactive, Inc. v. Johnston*, No. 16-cv-03404-BLF, 2019 WL 3387977, at *3 (N.D. Cal. July 26, 2019). Here, the Court has subject-matter jurisdiction under 28 U.S.C. § 1332, because this is a civil action between citizens of different states and the amount in controversy exceeds $75,000. Plaintiff is a California corporation with its principal place of business in California, while Defendant is a Texas limited partnership with its principal place of business in Texas. Mot. at 6. Plaintiff seeks contract damages totaling $706,745.67, well above the amount in controversy threshold. *Id.* at 16.

The Court must also have personal jurisdiction over the defendant, or else entry of default judgment is void. *Veeck v. Commodity Enters., Inc.*, 487 F.2d 423, 426 (9th Cir. 1973). For the reasons below, the Court finds that Plaintiff satisfied service of process and that Defendant consented to jurisdiction in California.

*A. Service of Process*

"A federal court is without personal jurisdiction over a defendant unless the defendant has been served in accordance with Federal Rule of Civil Procedure 4." *Travelers Cas. & Sur. Co. of Am. v. Brenneke*, 551 F.3d 1132, 1135 (9th Cir. 2009). "Rule

4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint." *United Food & Comm. Workers Union v. Alpha Beta Co.*, 736 F.2d 1371, 1382 (9th Cir. 1984). Under Rule 4(e) service of process may be conducted in accordance with the state law of where service is made, in this case Texas. Texas law permits the Secretary of State to act as "an agent of an entity for purposes of service of process, notice, or demand" if "the registered agent of the entity cannot with reasonable diligence be found at the registered office of the entity." Tex. Bus. Orgs. Code Ann. § 5.251.

In this case, Plaintiff first attempted to serve Defendant at Defendant's principal place of business, which was permanently closed. ECF No. 5 at 1. After attempting to find a current address for Defendant but failing to do so, Plaintiff sought an extension of time to serve, which the Court granted. *Id.* After the extension, Plaintiff successfully served The State of Texas, Secretary of State. ECF No. 6 at 1; Mot. at 6. The initial attempt to serve Defendant at Defendant's principal place of business and the subsequent attempt to find a current address constitutes "reasonable diligence"; therefore, service to the Secretary of State was proper under Texas law. Accordingly, the Court finds that Plaintiff has complied with the requirements of Rule 4.

### B. *Personal Jurisdiction*

"[P]arties to a contract may agree in advance to submit to the jurisdiction of a given court." *Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 316 (1964). By agreeing to a forum selection clause, a party consents to personal jurisdiction in that forum. *Twitch*, 2019 WL 3387977, at *4. When parties agree to submit to a certain jurisdiction, that agreement should be enforced and does not violate due process unless the agreement is "unreasonable and unjust." *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972).

Here, the Parties entered into the Services Agreement, which contains a forum selection clause. Section 10.5 of the Services Agreement states, "The parties agree that all actions or proceedings arising in connection with this Agreement shall be tried and litigated

exclusively in the federal or state courts located in the County of San Diego, California." Mot. at 6. Defendant therefore consented to jurisdiction in this Court. The Court finds no evidence that enforcement of the agreement would be unreasonable or unjust. Accordingly, the Court finds that it has personal jurisdiction over Defendant.

## II. Entry of Default Judgment

Having determined the Court has jurisdiction, the Court now turns to the merits of Plaintiff's Motion for Default Judgment, addressing each of the *Eitel* factors in turn.

### A. *Factor I: Prejudice to Plaintiff*

The first factor weighs in favor of entering default judgment. Plaintiff states a valid breach of contract claim against Defendant, and Defendant has failed to appear or otherwise participate in this action. Plaintiff has therefore suffered and continues to suffer injury from Defendant's breach of both the Services Agreement and the Settlement Agreement. Without a default judgment, Plaintiff lacks any other recourse to recover damages. This constitutes prejudice that favors default judgment. *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) (noting that "[i]f Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery" and will suffer prejudice); *see also Moroccanoil, Inc. v. Allstate Beauty Prods., Inc.*, 847 F. Supp. 2d 1197, 1200–01 (C.D. Cal. 2012) ("[A plaintiff] will generally be prejudiced if a court declines to grant default judgment where, as here, it lacks other recourse to recover damages for its injury or means to prevent [the defendant] from causing it further harm.").

### B. *Factors II and III: Claim Merits and Sufficiency of Complaint*

To warrant entering a default judgment, the complaint's allegations must be sufficient to state a claim upon which relief can be granted. *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). A complaint satisfies this standard when the claims "cross the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). A default concedes the truth of the allegations in the complaint, except those relating to damages. *TeleVideo*, 826 F.2d at

917–18 (quoting *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)); *Taylor Made*, 175 F.R.D. at 661 (noting that "[i]n assessing liability, the complaint's allegations are taken as true" because "a defendant's default functions as an admission of the plaintiff's well-pleaded allegations of fact").

Plaintiff brings a claim for breach of contract. To state a valid cause of action for breach of contract a plaintiff must show: "(1) existence of a contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages as a result of the breach." *Shue v. Optimer Pharm., Inc.*, No. 316CV02566BENJLB, 2018 WL 1116567, at *2 (S.D. Cal. Feb. 27, 2018) (citing *Miles v. Deutsche Bank Nat'l Tr. Co.*, 236 Cal. App. 4th 394, 402 (2015)).

Here, Plaintiff has shown: (1) the Parties entered into a contract, the Service Agreement, Compl. at 3–4; (2) Plaintiff performed its obligation under the Service Agreement by implementing the RPM system, *id.* at 4–5; (3) Defendant breached by failing to make payments due under the Service Agreement, *id.* at 5; and (4) Plaintiff suffered damages in the form of the unpaid service fees and other costs due under the Services Agreement, *id*. Accordingly, the Court finds that these factors guide in favor of granting default judgment.

### C. Factor IV: Sum of Money at Stake

Under this factor, the Court considers whether the damages sought are proportional to the alleged harm. *Landstar Ranger, Inc. v. Parth Enter., Inc.*, 725 F. Supp. 2d 916, 921 (N.D. Cal. 2010). When a plaintiff seeks only to recover the amount of money owed to it pursuant to a contract, "the sum of money at stake is reasonably proportionate to the harm caused to [it] by [the d]efendant['s] breach." *Walters v. Statewide Concrete Barrier, Inc.*, No. C–04–2559 JSW MEJ, 2006 WL 2527776, at *5 (N.D. Cal. Aug. 30, 2006).

Here, Plaintiff seeks to recover as damages the amount owed to it under the Services Agreement. To support these damages, Plaintiff submitted copies of invoices sent to Defendant, a calculation of late fees, and a calculation of unpaid minimum service fees. *See generally* Lawrence Decl. Therefore, "[b]ased on the evidence presented, the [C]ourt

7

18-CV-890 JLS (BLM)

concludes that the damages [Plaintiff] seeks are consistent with the terms of the contract[] and are otherwise appropriate." *Landstar Ranger*, 725 F. Supp. 2d at 921.

### D. Factor V: Possibility of Factual Dispute

This factor turns on the degree of possibility that a dispute concerning material facts exists or may later arise. *Eitel*, 782 F.2d at 1471–72. Here, Plaintiff's allegations must be taken as true because of the default, *see TeleVideo*, 826 F.2d at 917–18, and therefore any purported factual dispute appears settled as there is no indication that Defendant will defend against the action. Accordingly, this factor favors default.

### E. Factor VI: Reason for Default

If a defendant's default may have been the product of excusable neglect, this factor weighs against granting default judgment. *Eitel*, 782 F.2d at 1471–72. Here, there is no evidence of excusable neglect. Thus, this factor weighs in favor of default judgment.

### F. Factor VII: Policy Favoring Merits Decisions

Although this factor, by its nature, generally weighs against default judgments because it encourages merits decisions, "[t]he fact that Rule 55(b) has been enacted . . . indicates that 'this preference, standing alone, is not dispositive.'" *Landstar Ranger*, 725 F. Supp. 2d at 922 (citing *Pepsico*, 238 F. Supp. 2d at 1177 (quoting *Kloepping v. Fireman's Fund*, No. 94–2684, 1996 WL 75314, at *3 (N.D. Cal. 1996))). In the present case, there is no indication that a merits decision is practicable; Defendant has yet to answer Plaintiff's complaint. *See PepsiCo, Inc.*, 238 F. Supp. 2d at 1177 ("Defendant's failure to answer Plaintiffs' Complaint makes a decision on the merits impractical, if not impossible."). The Court therefore concludes that the timely administration of justice outweighs the strong preference for merits decisions in this case.

Based on the above, the Court finds that the *Eitel* factors weigh in favor of default judgment in this case. Accordingly, the Court **GRANTS** Plaintiff's Motion for Default Judgment.

///

///

### III. Assessment of Damages

"Under Rule 8(a)(3), plaintiff's demand for relief must be specific, and it must prove up the amount of damages." *Landstar Ranger*, 725 F. Supp. 2d at 923 (internal citations omitted). Additionally, "[r]ule 54(c) 'allows only the amount prayed for in the complaint to be awarded to the plaintiff in default.'" *Id.* (quoting *Fong v. United States*, 300 F.2d 400, 413 (9th Cir. 1962)). In its Motion, Plaintiff seeks contract damages totaling $706,745.67. Mot. at 16. This total includes unpaid service fees, unpaid finance charges, reimbursable expenses, and unpaid minimum monthly service fees, all of which Plaintiff prayed for in the Complaint. *Id.*; *see generally* Compl.

First, Plaintiff claims entitlement to $139,396.21 in unpaid service fees. *Id.* at 11, 16. This amount is supported by the seven unpaid invoices of $21,320 for monthly service fees. Lawrence Decl., Ex. B. Plaintiff reduces the price owed for the February 1, 2017, invoice by applying "$9,843.79 of the $10,000 payment made by [Defendant] on January 20, 2018 under the Settlement Agreement." Mot. at 14. Plaintiff does not explain why the entire $10,000 payment was not remitted from the damages sought or where the remaining $156.21 was applied. Additionally, Plaintiff does not indicate where, if at all, it reduced its claim for damages for the $20,000 settlement payment that Plaintiff received from Defendant on December 8, 2017. *See* Mot. at 5. Without this information, the Court cannot conclude the amount of damages requested is correct.

Next, Plaintiff claims entitlement to $23,120.92 of unpaid finance charges and $4,228.54 in reimbursable expenses. *Id.* at 16. Plaintiff supports its claim for the unpaid finance charges with calculations located in an attached table of late fees. Lawrence Decl., Ex. D. The table appears to be an accurate reflection of the "1.5% per month late fee on insufficient funds" allowed for in the Services Agreement. Mot. at 15. The claim for $4,228.54 in costs is similarly well supported. Plaintiff provides two invoices for reimbursable expenses, which total $4,228.54. Lawrence Decl., Ex. C.

Finally, Plaintiff seeks $540,000 for twenty-seven months of minimum monthly service fees. Mot. at 16. Section 9.4.2 of the Services Agreement states: "If Plaintiff

terminates the RPM Contract as the result of an uncured material breach by Defendant, Defendant agrees to immediately pay Plaintiff the Minimum Service Fee as set forth in Schedule 1 – Fees & Payments, for the remainder of months for the then-current Term." Compl. at 4. Because the contract was terminated in August 2017, and was set to continue until November 1, 2019, Defendant is obligated to pay the $20,000 minimum monthly service fee for the twenty-seven months remaining in the term. Mot. at 16. Plaintiff's request for $540,000 accurately reflects $20,000 times twenty-seven. *See* Lawrence Decl., Ex. G.

Although Plaintiff sufficiently supports its request for damages with evidence the Court finds reliable, the Court cannot approve the amount requested on the current record. The Court cannot account for the $20,000 from the December 2017 payment or the remaining $156.21 from the $10,000 January 2018 payment. Therefore, the Court **ORDERS** Plaintiff to submit a statement and any supporting evidence regarding these payments and whether they were accounted for in Plaintiff's claim for damages within fourteen (14) days from the date on which this Order is electronically docketed.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiff's Motion for Default Judgment. Regarding the amount of damages, Plaintiff **SHALL SUBMIT** a statement and evidence regarding the $20,000 January 2018 settlement payment and the remaining $156.21 from the December 2017 settlement payment on or before fourteen (14) days from the date on which this Order is electronically docketed.

**IT IS SO ORDERED.**

Dated: November 18, 2019

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge